James R. Denlea (JD-4610)
Jeffrey I. Carton (JC-8296)
Robert J. Berg (RB-8542)
DENLEA & CARTON LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
(914) 331-0100
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JAMES KOMMER, on behalf of himself
and all others similarly situated,           :
                                             :
                                             :   Civil Action No. 7:16-cv-1560
          Plaintiff,                         :
                                             :
      -against-                              :   **CLASS ACTION COMPLAINT**
                                             :
BAYER CONSUMER HEALTH,                       :   **JURY TRIAL DEMANDED**
a division of Bayer AG, and                  :
MSD CONSUMER CARE, INC.,                     :
                                             :
          Defendants.                        :
--------------------------------------------------------x

Plaintiff, James Kommer ("Kommer"), brings this action on his own behalf, and on

behalf of a class of similarly situated consumers, based upon his personal knowledge

as to his own acts, and upon information and belief and the investigation of his counsel

as to all other matters, and alleges as follows:

## NATURE OF ACTION

1.      This action seeks to redress Defendants' deceptive marketing practices in

connection with the sale of Dr. Scholl's "Custom Fit Orthotic" inserts.  Nearly everyone

has suffered from foot pain at some point in his or her life.  Foot pain can be debilitating

and should not be ignored.  Foot problems can affect the proper functioning of other

parts of the body, such as the hip, knee, and back, and may be manifestations of

diseases such as diabetes or cardiovascular disease.  Medical professionals, including orthopedists, osteopaths, chiropractors, and podiatrists, are uniquely qualified by their education, training, and experience to diagnose and treat conditions related to the foot.

2.      Among the treatments often prescribed by medical specialists in the field of foot pain relief and normal foot function restoration is the use of "custom fit orthotics." Custom fit orthotics are custom-made shoe inserts which are specifically designed for the individual patient.  Ideally, they are custom fitted by the podiatrist, chiropractor, or physician upon completion of a detailed physical examination and measurements of the patient's foot.  Indeed, "custom-made" is defined in the Merriam-Webster dictionary as "made to fit the needs or requirements of a particular person; made to individual specifications."  www.merriam-webster.com/dictionary/custom-made.  Thus, the process of properly customizing an orthotic to effectively treat a patient's discomfort requires careful physical and clinical examination by a trained professional, followed by proper casting and/or computer imaging in order to fabricate the custom-fitted orthotic.

3.      Because of the training and skill involved in diagnosing a patient's foot problem, understanding the biomechanical forces involved, measuring for a custom fit orthotic, and fabricating the orthotic, the costs incurred by a patient can be significant, amounting to hundreds of dollars in many instances.  As a consequence, consumers seeking the benefits of a custom orthotic are susceptible to claims from less expensive, over-the-counter products.  Unfortunately, some sellers, such as Defendants herein, prey on such consumers, often seniors, by deceptively advertising and marketing their over-the-counter shoe inserts as "custom fitted orthotics."  These unscrupulous companies, including Defendants, use false and misleading marketing tactics and a play

on words to deceive a consumer into thinking he/she is getting an "over the counter" custom orthotic to treat biomechanical deformities of the foot.  In actuality, he/she is buying nothing more than an inexpensive and ineffective arch cushioning device which, because of its inferior materials and construction, will likely break down with expected regular use.

4.     Defendants' Dr. Scholl's "Custom Fit Orthotic Inserts" are falsely advertised and deceptively marketed by Defendants as supposedly customized for the consumer's feet, yet they are standardized factory-manufactured inserts which cannot and do not compare to a custom orthotic device, which is tailored to the specific measurements of each of a patient's feet, individually.  In fact, the over-the-counter, store-bought Dr. Scholl's Custom Fit Orthotic Inserts are only support and cushioning devices, and do not correct biomechanical imbalances and abnormalities to consumers' feet.  Significantly, they are sold in pairs of identical inserts, without regard for the unique pathology present in each foot of the consumer.  It is comparable to an eye doctor prescribing the same lenses for two different eyes.

5.     Dr. Scholl's has even gone so far as to place a high technology-looking machine in many retailers' stores – its Dr. Scholl's Custom Fit Orthotics Foot Mapping Kiosk – on which consumers can stand, watch a screen as the so-called foot mapping sensors conduct a few basic foot measurements, and think they are having custom orthotics designed specifically for their physiology.  In reality, the Kiosk simply directs consumers to pick one of fourteen numbered, pre-manufactured Dr. Scholl's over-the-counter arch inserts for which consumers pay nearly <u>five times</u> the price of other manufacturers' over the counter arch inserts.

3

6.      Notably, Defendants' Kiosk computer is not programmed to refuse offering a product to those who stand upon it.  Rather, every person who stands on the machine and follows the on-screen instructions will be recommended to purchase one of the fourteen Dr. Scholl's Custom Fit Orthotics Inserts, even if the person has no foot problems at all.

7.      Defendants' misleading representations and omissions are conveyed to the consuming public uniformly and through a variety of media, including television advertisements, the Dr. Scholl's website and online promotional materials, and most importantly, at the point of purchase, where Defendants ensure that the false claims are prominently made on the products' packaging and labeling and through the use of Defendants' Dr. Scholl's Custom Orthotics Foot Mapping Kiosks.

8.      As a result of Defendants' deceptive representations and material omissions, consumers -- including Plaintiff and members of the proposed class -- have purchased Dr. Scholl's Custom Fit Orthotics Inserts which they otherwise would not have purchased, and in any event, are far more expensive than equivalent products.

9.      Plaintiff brings this class action on behalf of himself and all other similarly situated consumers who purchased Dr. Scholl's Custom Fit Orthotics Inserts in the State of New York to recover monetary damages as a result of this false and misleading advertising.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).  The matter in controversy, exclusive of interest and costs, exceeds the sum of $5,000,000.00, is a class action in which there

are in excess of 100 class members, and many members of the class are citizens of a state different from Defendants.  28 U.S.C. §1332(d)(2)(A).

11.     Venue is proper in this District because Defendants do business in this District, and many of the acts giving rise to this action occurred in this District.

## CHOICE OF LAW

12.     New York law governs the state law claims asserted herein by Plaintiff and the New York class he seeks to represent.

## PARTIES

13.     Plaintiff James Kommer is a natural person of full age of majority who is domiciled and resides in Saratoga County in the State of New York.  Plaintiff owns a retail business, and stands and walks around much of his day.  Over time, Plaintiff experienced foot pain and aches.  In or around 2011, he went to his chiropractor, discussed his symptoms, and was physically examined by the chiropractor.  The chiropractor recommended that he be fitted for custom orthotics, which he was at the cost of approximately $333.

14.     In 2014, Plaintiff desired a second pair of orthotics but wished to avoid the high cost associated with them.  Plaintiff looked for a less expensive, but custom solution, and encountered a Dr. Scholl's Custom Fit Orthotic Inserts Foot Mapping Kiosk at the Walmart store at 16 Old Glick Road in Saratoga Springs, New York.  Believing the Kiosk would provide him with a "custom fit orthotic" as advertised, Plaintiff had his feet "mapped," following the instructions provided on the screen on the Kiosk.  At the end of the process, the Kiosk recommended that Plaintiff purchase one of the fourteen pre-manufactured Dr. Scholl's Custom Fit Orthotic Inserts.  Plaintiff tried the foot

mapping process a few times, and each time, the Kiosk recommended the same model number of Dr. Scholl's Custom Fit Orthotic Inserts.

15.     Because the price of the Dr. Scholl's Custom Fit Orthotic Inserts at Walmart – approximately $50 – was so much lower than the $300+ custom orthotics he had purchased previously, and based upon the representations made at the point of sale, and on the product packaging, Plaintiff purchased Dr. Scholl's Custom Fit Orthotic Inserts believing they would alleviate the pain and aches in his feet.

16.     After purchasing the Dr. Scholl's Custom Fit Orthotic Inserts recommended by the Foot Mapping Kiosk, Plaintiff used the product for several months. He found when he used the Dr. Scholl's Custom Fit Orthotic Inserts, that instead of obtaining relief from his foot pain and aches, his pain and aches actually became worse. In contrast, when Plaintiff used his prescribed custom fitted orthotics, Plaintiff experienced relief from his foot pain and aches.

17.     Plaintiff had been exposed to and has seen Defendants' representations for their Dr. Scholl's Custom Fit Orthotic Inserts by reading the labels of the products, by using the in-store Dr. Scholl's Custom Fit Orthotic Inserts Kiosk, as well as by having viewed some of Defendants' television commercials for the products.  Based on the representations contained on the product packaging, in the Kiosk, and on the advertisements for the Dr. Scholl's Custom Fit Orthotic Inserts product Plaintiff had viewed, Plaintiff was led to believe, and believed, that the Dr. Scholl's Custom Fit Orthotic Inserts products he purchased were actually custom fit orthotic inserts individually designed for each of his feet which could and would alleviate his foot pain and aches.  In fact, the Dr. Scholl's Custom Fit Orthotic Inserts products Plaintiff

purchased are simply standardized, mass produced over-the-counter shoe inserts.  Had Plaintiff known the truth about Defendants' misrepresentations and omissions about the Dr. Scholl's Custom Fit Orthotic Inserts products, Plaintiff would not have purchased the products, and in any event, he would not have paid the premium price he paid.  As a result, Plaintiff has suffered injury in fact and lost money.

### The Defendants

18.     "Dr. Scholl's" is an over-the-counter brand of foot care products started by Dr. William Mathias Scholl in 1906 in Chicago, Illinois.  After Dr. Scholl's death in 1968, the Schering-Plough Corporation bought the Dr. Scholl's brand.

19.     Bayer AG ("Bayer") is a 150+ year old German corporation headquartered at Kaiser-Wilhelm-Allee 1, 51368 Leverkusen, Germany.  Bayer is one of the largest corporations in the world, and operates in three main segments: Pharmaceuticals, Consumer Health, and Crop Science.  On or about October 1, 2014, Bayer completed the acquisition of the consumer care businesses of U.S. pharmaceuticals giant, Merck & Co., Inc. ("Merck").  Among the many consumer care businesses which Bayer purchased from Merck is the Dr. Scholl's foot care business in North America and Latin America.

20.     Bayer Consumer Health, a division of Bayer AG, is responsible for manufacturing, marketing, and selling the Dr. Scholl's products, including the Dr. Scholl's Custom Fit Orthotics Inserts products.

21.     Bayer Consumer Health manufactures, distributes, markets, advertises, and sells Dr. Scholl's Custom Fit Orthotics Inserts throughout the United States.  The Bayer Consumer Health division of Bayer has its principal place of business in the

United States at 100 Bayer Boulevard, Whippany, New Jersey  07981.

22.   Merck is a New Jersey corporation with its principal place of business located at One Merck Drive, Whitehouse Station, New Jersey.  Merck is a giant U.S. pharmaceuticals corporation.  On or about November 4, 2009, Merck merged with Schering-Plough Corporation, which owned the Dr. Scholl's brand and products.  From November 4, 2009 until October 1, 2014, when Merck sold its consumer care products, including the Dr. Scholl's brand, to Bayer, Merck's wholly-owned subsidiary, MSD Consumer Care, Inc. ("MSD") manufactured, distributed, marketed, advertised and sold Dr. Scholl's products, including Dr. Scholl's Custom Fit Orthotics Inserts, throughout the United States, including in the State of New York.

23.   MSD is a Delaware corporation formerly known as Schering-Plough Healthcare Products, Inc.  Between November 4, 2009 and October 1, 2014, MSD manufactured, distributed, marketed, advertised, and sold Dr. Scholl's products, including Dr. Scholl's Custom Fit Orthotics Inserts, throughout the United States, including in the State of New York.

## **FACTUAL ALLEGATIONS**

24.   According to New York's Hospital for Special Surgery, "[c]ustom-made foot orthotics are medical devices inserted into the shoe to correct an abnormal or irregular walking pattern.  They are prescribed to reduce pain, to provide support, to prevent foot deformity, or keep it from getting worse, to provide better positioning, to relieve pressure on a certain area of the foot, and to improve the overall biomechanical function of the foot and lower extremity." www.hss.edu/conditions_foot-orthotics-prescriptions.asp.

8

25.     The process undertaken by medical professionals in prescribing a custom fit orthosis is detailed and complex.  According to the "Prescription Custom Foot Orthoses Practice Guidelines, " issued by the American College of Foot & Ankle Orthopedics Medicine, the following evaluation and documentation are required to successfully execute a treatment plan incorporating the use of custom fitted orthotics: the assessment of the range and quality of motion and the position of the ankle complex, the rear foot complex, and the forefoot/rear foot complex; the gross assessment of muscle strength, with testing of specific muscles in certain pathologies; an evaluation of the stance position; a clinical evaluation of the limb length; and a gait evaluation.  For certain pathologies, assessment of the position, range and quality of motion of the spine, hip complex, knee complex, fifth ray, first ray, first metatarsal-phalangeal joint, lesser metatarsal-phalangeal joints, and inter-phalangeal joints may be necessary. *See www.acfaom.org/pg1103.pdf*.  Once the physical evaluation is completed, the shape and contour of the patient's foot are captured by either obtaining a cast of the foot and/or by computer or mechanical imaging of the foot.  Moreover, patient-specific information, including shoe size and width, heel height of shoe, heel lifts, biomechanical data pertinent to the patient's deformity, weight, age, activity level, occupation, and diagnosis, are needed to create an appropriate custom fitted orthotic prescription. *Id.*

26.     Defendants, in marketing their Dr. Scholl's Custom Fit Orthotics Inserts, falsely advertise to and deceive customers into believing that the Dr. Scholl's Custom Fit Orthotics Inserts are functionally equivalent to and will provide the same benefits as custom fit orthotics prescribed by a medical professional.  But a prefabricated shoe

insert, which is what a Dr. Scholl's Custom Fit Orthotics Insert really is, is not manufactured based upon the actual examination, evaluation, and assessment of the individual's feet, and is not customized to any individual foot.

27.     The American Podiatric Medical Association explains the critical distinction between a "shoe insert" and a "custom orthotic device: "Shoe inserts are any kind of non-prescription foot support designed to be worn inside a shoe.  Pre-packaged arch supports are shoe inserts.  So are the 'custom-made' insoles and foot supports that you can order online or at retail stores.  Unless the device has been prescribed by a doctor and crafted for your specific foot, it's a shoe insert, not a custom orthotic device – despite what the ads might say."  *See* www.apma.org/Learn/FootHealth.cfm?ItemNumber=988.

28.     Beginning in or about 2009, Defendants began marketing their Dr. Scholl's Custom Fit Orthotics.  Dr. Scholl's Custom Fit Orthotic Inserts products are sold in New York and nationwide at leading pharmacies, superstores, and other retailers, including, among others, CVS, Walgreen's, Walmart, K-Mart, and Bed, Bath & Beyond, as well as are sold online directly by Amazon.com, Walgreens.com,  Walmart.com, and by many other online sellers.

29.     Key to Defendants' marketing program are the point of sale "Dr. Scholl's Custom Fit Orthotics Foot Mapping Centers."  These "Mapping Centers" are stand-alone kiosks that are placed in retail stores and other locations where the product is sold.  The kiosks look like computerized weight scales, with delineated footprints to stand on and a computer monitor at the top.  As explained on the Dr. Scholl's website:

> The Dr. Scholl's Custom Fit Kiosk uses Foot Mapping technology to gather different measurements of your feet and recommend the Custom Fit Orthotic Inserts that are right for you.

**How does it work?**

It uses 2,000 pressure sensors to create your unique Foot Map

**What does it measure?**

Your arch type, foot length and pressure points

**Why should I try it?**

It's easy to use and only takes a few minutes.

30.     The instructions on the Kiosk tell users to 1) Remove Shoes; 2) Step on Mat; and 3) Touch Screen to Begin.  Once the user presses the touch screen to begin, she is instructed to place her feet over the marked foot image.  By moving as directed, the machine's sensors purport to measure the user's arch, pressure points, and foot length.  After the machine takes the measurements, it usually takes less than two minutes for the system to map the user's data, obtain the analysis, and provide the recommendations for the purported best custom fitted orthotics for the user's feet.  A variety of standardized Dr. Scholl's orthotic inserts are stacked on shelves on the sides of the kiosk, and the user is directed to purchase the specific model number recommended by the machine.  The Dr. Scholl's Custom Fit Orthotic Inserts are claimed to reduce foot pain, knee pain, and lower back pain.

31.     The Dr. Scholl's "Foot Mapping" technology provides little more than a measurement of foot length and width along with an imprecise assessment of foot posture using an arch index measurement.  Significantly, because the arch is not being measured in three dimensions, the height of the arch is presumed by a measure of pressure of the foot around the arch.  Whether the height of the arch is ¼" or ¾" is not discernable without a three dimensional measurement.  Different kiosks may show

11

different results for the same person when determining an individual's arch index using the Dr. Scholl's "Foot Mapping" process. The differing results may arise from the individual's weight and stance on the "Foot Mapping" kiosk. Defendants' marketing claim of "you can't screw it up" demonstrates the imprecision of the kiosk, as it will make a recommendation even if the foot is not ideally positioned. Moreover, even though an individual's arch index may be one of many factors that could be considered in prescribing an effective orthotic device, relying on this one factor alone is not sufficient to properly assess and prescribe a custom fit orthotic. The confluence of pseudo-technology and deceptive marketing has had the intended effect of convincing consumers that the Dr. Scholl's Custom Fit Orthotics Inserts are both efficacious and custom-made. In fact, they are neither.

32. Although Defendants market the product as a "custom fit orthotic," it is not. In reality, there are only 14 pairs of inserts available for purchase at the kiosks. A true custom fit orthotic accounts for the many different combinations of characteristics of any particular individual. But regardless of the actual condition of a consumer's feet, the Dr. Scholl's "Foot Mapping" technology always recommends one of its pre-fabricated 14 pairs of "custom fit" inserts as the right solution for that consumer. Significantly, there is no setting on the machine to tell a consumer that none of the offered products is appropriate for that consumer, nor is there any setting that recommends that the consumer seek professional medical care. Each of the Dr. Scholl's Custom Fit Orthotic Inserts is ascribed a general size and arch support stiffness, and the Dr. Scholl's "Foot Mapping" technology simply takes the gross measurements of an individual's feet and assigns whichever of the 14 pre-fabricated pairs comes closest to those measurements.

12

33.     Thus, although Defendants describe their product as Custom Fit Orthotic Inserts, these inserts are nothing more than generic, pre-fabricated, mass-produced, over-the-counter shoe inserts, and are not custom fit to a consumer's unique physical characteristics.

34.     The Dr. Scholl's Custom Fit Orthotic Inserts are not inexpensive.  Rather, a pair generally costs about $50 at discount retailers like Walmart and drugstore.com, and as much as $70 per pair at other retailers.  Defendants assign designations not found on their other products such as "CF440" to suggest a level of precision and exactitude that is not present in the product.  Similar pre-fabricated shoe inserts typically sell for about $10 at retail, such as Dr. Scholl's own Massing Gel Work insoles, for instance.

35.     Indeed, recognizing the deceptive nature of Defendants' practices in marketing the Dr. Scholl's Custom Fit Orthotic Inserts products, a group of podiatrists has commenced a class action litigation against Defendants in the United States District Court for the Northern District of Illinois, Eastern Division, captioned *Lowell Scott Weil, DPM, and Weil Foot and Ankle Institute, LLC v. Bayer AG, Bayer HealthCare, LLC, Bayer Consumer Care, LLC, Merck & Co., Inc., and MSD Consumer Care, Inc.*, Case No. 1:15-cv-11519, filed December 22, 2015.  That class action alleges claims under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and for unfair competition, and seeks monetary damages and injunctive relief because Defendants' deceptive and unfair trade practices have caused podiatrists to lose business and damaged their reputations and goodwill.  The instant class action, on the other hand, seeks monetary damages and injunctive relief on behalf of *consumers* who have been misled by

Defendants into purchasing products that they would not have otherwise purchased, or for which they have paid a premium price – around $50 – rather than around $10 for comparable pre-manufactured shoe inserts.  Alternatively, statutory damages may also be awarded to consumers to redress Defendants' unfair and deceptive marketing practices.

36.     Plaintiff purchased the Dr. Scholl's Custom Fit Orthotic Inserts products for his own personal use – i.e., to relieve his foot pain and aches.  Plaintiff purchased the products because he believed, based upon the claims made on the products' packaging and PDPs, the Dr. Scholl's Kiosk, and Defendants' television commercials, that they were actually custom fit orthotics rather than stock, manufactured shoe inserts, and he paid a premium price for those products.

37.     Plaintiff and the class members have been and will continue to be deceived or misled by Defendants' deceptive representations.  Plaintiff purchased the Dr. Scholl's Custom Fit Orthotic Inserts products during the class period and in doing so, read and considered the products' PDPs and other packaging and the Dr. Scholl's Kiosk, and based his decision to purchase the products on the representations made on the products' packaging and the Kiosk, which are entirely consistent with Defendants' nationally-run television ads for the products which Plaintiff also has viewed. Defendants' representations and omissions were a material factor in influencing Plaintiff's decisions to purchase the Dr. Scholl's Custom Fit Orthotic Inserts products.

38.     Plaintiff and the class would not have purchased the Dr. Scholl's Custom Fit Orthotic Inserts products, or paid the premium price they paid, had they known

Defendants' representations on the product packaging, on the Kiosk, and in their advertising are false and misleading.

39.     As a result, Plaintiff and the class members have been injured in fact by their purchase of the products they were deceived into purchasing and for which they paid a premium price.

40.     Defendants, by contrast, have reaped enormous profits from their false marketing and sale of the products.

## CLASS DEFINITION AND ALLEGATIONS

41.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers.  Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that he or any class member may have suffered through the use of the Dr. Scholl's Custom Fit Orthotic Inserts products.

42.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class:

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York any of Defendants' Dr. Scholl's Custom Fit Orthotics Inserts.  Excluded from the class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased Dr. Scholl's Custom Fit Orthotics Inserts products for resale.

43.     **Numerosity.**  This action is appropriately suited for a class action.  The members of the class are so numerous that joinder of all members of the class is impracticable.  Plaintiff is informed, believes, and thereon alleges, that the proposed class contains thousands of purchasers of Dr. Scholl's Custom Fit Orthotics Inserts who

have been damaged by Defendants' conduct as alleged herein.  The precise number of class members is unknown to Plaintiff.

44.    **Existence and Predominance of Common Questions of Law and**

**Fact.**  This action involves questions of law and fact common to the class.  In marketing the Dr. Scholl's Custom Fit Orthotics Inserts products, Defendants have engaged in an untrue and systematic course of misrepresenting the products to consumers.  The common legal and factual questions include, but are not limited to, the following:

- Whether Defendants made false or misleading representations regarding the nature and efficacy of the products;

- Whether Defendants represented that the products were of a particular standard or quality when they were not;

- Whether the claims made by Defendants regarding the products discussed above are true, or are misleading, or objectively are reasonably likely to deceive;

- Whether the alleged conduct constitutes violations of the law asserted;

- Whether Defendants engaged in false or misleading advertising;

- Whether the class members obtained the benefits that Defendants represented the products have;

- Whether Plaintiff and class members have sustained monetary loss and the proper measure of that loss; and

- Whether, as a result of Defendants' misconduct, the class is entitled to monetary and statutory damages, as well as equitable and injunctive relief.

45.    **Typicality.**  Plaintiff's claims are typical of the claims of the members of the class, because, *inter alia*, all class members have been injured through the uniform misconduct described above, and were subject to Defendants' deceptive representations, including the representations that accompany each and every label or

packaging of the products (described in detail above) and were made on Defendants'

websites and other advertising media.  Moreover, the named Plaintiff's claims are

typical of the class members' claims.  Plaintiff is advancing the same claims and legal

theories on behalf of himself and all members of the class.

46.    **Adequacy of Representation.**  Plaintiff will fairly and adequately protect

the interests of the members of the class.  Plaintiff purchased the Dr. Scholl's Custom

Fit Orthotics Inserts; and he relied upon the deceptive representations that were made

in Defendants' marketing and advertising campaign, and on the labels on each and

every package.  As a result, Plaintiff has suffered an injury in fact as a result of

Defendants' conduct, as did all class members who purchased the Dr. Scholl's Custom

Fit Orthotics Inserts products.  Plaintiff has retained counsel experienced in complex

consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

Plaintiff has no adverse or antagonistic interests to those of the class.

47.    **Superiority**.  A class action is superior to other methods for the fair and

efficient adjudication of this controversy.  The damages or other financial detriment

suffered by individual class members are relatively small compared to the burden and

expense that would be entailed by individual litigation of their claims against

Defendants.  It would be virtually impossible for a member of the class, on an individual

basis, to obtain effective redress for the wrongs done to him or her.  Furthermore, even

if the class members could afford such individualized litigation, the court system could

not.  Individualized litigation would create the danger of inconsistent or contradictory

judgments arising from the same set of facts.  Individualized litigation would also

increase the delay and expense to all parties and the court system from the issues

17

raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

48.    Plaintiff seeks monetary damages, including statutory damages on behalf of the entire class, and other equitable relief on grounds generally applicable to the entire class, to enjoin and prevent Defendants from engaging in the acts described. Unless a class is certified, Defendants will be allowed to profit from their deceptive practices, while Plaintiff and the members of the class will have suffered damages. Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the class and the general public will continue to be deceived.

49.    Defendants have acted and refused to act on grounds generally applicable to the class, making final injunctive relief appropriate with respect to the class as a whole.

## COUNT I

### (Violation of New York General Business Law Section 349)

50.    On behalf of himself and the members of the New York Class, as defined in Paragraph 42 above, Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 49 above.

51.    Defendants have made false representations about their Custom Fit Orthotics Inserts products, and so, the representations claimed are deceptive, and have

the capacity, tendency and effect of deceiving reasonable consumers who purchase the products.  Reasonable consumers would believe that the Custom Fit Orthotics Inserts are functionally equivalent to real custom fit orthotics inserts prescribed by medical professionals.  In reality, Defendants' Custom Fit Orthotics Inserts just provide cushioning and do not provide customized treatment for the customers' foot ailments. Defendants made, and make, the false representations about their Custom Fit Orthotics Inserts with the intent to induce consumers, and members of the class sought herein, to purchase the products by causing them to rely on the false and deceptive representations described herein.

52.     Defendants have deceptively advertised, marketed, promoted, distributed, and sold their Custom Fit Orthotics Inserts products.

53.     Plaintiff and the Class have been aggrieved by and have suffered losses as a result of Defendants' violations of Section 349 of the New York General Business Law.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured in the amount of the purchase prices for the Dr. Scholl's Custom Fit Orthotics Inserts products that they paid, or in the alternative, have been damaged by paying more for the Custom Fit Orthotics Inserts products that they purchased than for other similar cushioning products.

54.     Defendants continue to violate Section 349 of the New York General Business Law, and continue to aggrieve the members of the Class.

55.     By reason of the foregoing, Defendants' conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York

General Business Law, and Defendants are liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

56.     Plaintiff further demands injunctive relief enjoining Defendants from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 349 of the New York General Business Law.

### COUNT II

### (Violations of New York General Business Law Section 350)

57.     On behalf of himself and the members of the New York Class, as defined in Paragraph 42 above, Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 56 above.

58.     New York's General Business Law Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

59.     Section 350 defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."  The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity…to which the advertising relates."

60.     Defendants' labeling, marketing, and advertising of the Dr. Scholl's Custom Fit Orthotic Inserts are "misleading in a material respect," and thus "false advertising," as they falsely represent the products to be Custom Fit Orthotic Inserts when, in reality, they are nothing more than generic, pre-fabricated, mass-produced, over-the-counter shoe inserts and are not custom fit to a consumer's unique physical characteristics.

61.     Defendants continue to violate Section 350 of the New York General Business Law, and continue to aggrieve the members of the Class.

62.     By reason of the foregoing, Defendants' conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 350 of the New York General Business Law, and Defendants are liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

63.     Plaintiff further demands injunctive relief enjoining Defendants from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 350 of the New York General Business Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

1.      Certifying this action as a class action as soon as practicable, with the class as defined above, designating Plaintiff as the named class representative, and designating the undersigned as Class Counsel.

2.      On Plaintiff's First Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

3.      On Plaintiff's Second Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

4.      Awarding Plaintiff and the Class interest, costs, and attorneys' fees.

5.      Enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Sections 349 and 350 of the New York General Business Law.

6.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a

trial by jury on all issues so triable.

Dated:    White Plains, New York
          February 29, 2016

                              Respectfully Submitted,

                              /s/   Jeffrey I. Carton
                              DENLEA & CARTON LLP
                              Jeffrey I. Carton, Esq. (JC-8296)
                              James R. Denlea (JD-4610)
                              Robert J. Berg, Esq. (RB-8542)
                              2 Westchester Park Drive, Suite 410
                              White Plains, N.Y. 10604
                              Telephone: (914) 331-0100
                              Facsimile:  (914) 331-0105
                              jcarton@denleacarton.com
                              jdenlea@denleacarton.com
                              rberg@denleacarton.com